# Newkirk's Appeal.

Stock was loaned by A to B, to be returned on demand. Subsequently A died, and by his last will appointed B and C his executors. No demand was made in the lifetime of the testator. B's co-executor afterwards made demand, and the stock was immediately returned, but it had, in the meantime, greatly depreciated in value. Similar stock belonging to the estate had been retained by the co-executor, it not being deemed prudent to sell it. *Held*, that the terms of the contract of borrowing had been fully complied with, by the return of the stock on the demand of the co-executor, and that B was not liable to surcharge, in his account as executor, for the depreciation in its value. That while he was bound to use diligence in its management, and would be answerable for negligence therein, yet as it had not been deemed prudent by his co-executor to sell other shares of the same stock, belonging to the estate, he was not properly chargeable with the loss caused by the depreciation of the stock which he had borrowed.

APPEAL from the decree of the Orphans' Court of *Philadelphia County*.

Opinion of the court by

THOMPSON, J.—The auditor's report in this case, confirmed by the Orphans' Court, does not, in our opinion, exhibit sufficient reason for surcharging the appellant's account with the depreciation of the stock in question. It had been loaned to him by the testator, to be returned on demand. Of course this only meant that an equal amount of stock of the same company should be returned, and not necessarily the identical stock

loaned. No demand was made in the lifetime of the testator. It was demanded by the co-executor of the accountant, and immediately returned; but it had greatly depreciated in value. If nothing but this had been the case, it would readily be conceded that the terms of the contract of borrowing had been fully complied with by the return of the stock on demand, according to contract.

But it is claimed that the appellant, being one of the executors of the estate, that his position is somewhat changed. This is true, to the extent that, in addition to his personal obligation to return the stock, he was officially bound to diligence in its management, to the best advantage, for the interest of the estate, and consequently answerable for negligence or indiscretion in this respect. But this, as a ground of liability, must be proved, and it was not found to be so by the auditor. It would seem, rather, that he surcharged the accountant to the extent of the depreciation of the stock between the granting of letters of administration and its return, because he did not inventory it (which it seems he did), and have it appraised. The appraisement of it would not have fixed its value, unless it sold for that amount. It is the sale list which fixes the amount of liability of the administrator or executor.

If, therefore, it was made to appear, which assuredly it was, that at and about the date of the grant of letters testamentary it was not a judicious or prudent time, in the opinion of those best acquainted with such matters, to sell, and that it was most prudent to await the chances of a rise in the stock market (and so the Orphans' Court decided in passing the account of the appellant's co-executor, who had retained stock of the same company in his hands under the same expectation), the accountant should not be held to a greater degree of intelligence and judgment than other prudent persons exercised in their own cases. If the stock was not wanted for the market, because not a proper time to expose it to sale, then no injury ensued to the estate because not returned; obviously nothing was lost, if no sale was to be made of it at that time. Mr. Smith, the acting co-executor, testifies as follows, speaking of this stock: "I let the stock lie, I did not require it of Mr. Newkirk. The fact is, I did not think the time had arrived to sell the stock, although in that, it seems, I was mistaken. I held other stock of the same kind belonging to the estate which I did not sell." If it was not proper and wise in the circumstances of the money market to sell the stock at the time claimed, as not only this witness but a number of others, without contradiction, thought it was not, and which the auditor does not negative in his finding, then holding the accountant to the ordinary rule of prudence in the management of the business of the estate as

[Drake *v.* Farmers' Union Insurance Co.]

prudent men in the management of their own would have done, he is not chargeable for not returning and offering the stock for sale at the early period fixed by the auditor. If the rule of prudence was to hold on and not sell, it must apply to him as well as others. It is true that this is not made a distinct ground of charge, but as the non-appraisal of the stock is the ground, we must suppose that as that was not an injury of itself, that in consequence of its not being on hand something was lost to the estate, but thus explained there was nothing in this. If the non-appraisal did no injury, it is too severe a penalty to charge the accountant with over $2,000 for the neglect of a duty that resulted in not one cent of damage.

If the stock was not wanted for sale, it was not wanted for any other purpose that we can discover, until it was finally returned pursuant to the demand of the co-executor. No loss ensued, therefore, because not sooner returned. That the accountant purchased stock to repay his loan for less money when the stock was demanded, and consequently wanted, than he could have bought it when not wanted, was no loss to the estate—it was only his gain, and is certainly no ground of surcharge.

It was unnecessary to have waited the appellant's discharge as executor; the question involved here could have been tested upon the confirmation of the co-executor's account; and its determination, as we determine it now, would have saved costs.

We think the surcharge of $1,836 against the accountant for depreciation of the stock was wrong, and must be stricken out; and so, too, the interest thereon. The $10 paid as costs for filing the account of Mrs. Cheeseman is not a proper surcharge under the circumstances of this case.

> The decree of the Orphans' Court is reversed, and the appellant's account thereon confirmed, at the cost of the appellees.